**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRIC OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ZACH FUGMAN | : | Case No. 1:24-cv-00697-MWM |
| | : | |
| and | : | Judge Matthew W. McFarland |
| | : | |
| ZACH FUGMAN, derivatively on behalf of BANANA CAPITAL PARTNERS, LLC | : | |
| | : | **FIRST AMENDED** |
| Plaintiffs, | : | **VERIFIED COMPLAINT** |
| | : | |
| v. | : | **REQUEST FOR TEMPORARY** |
| | : | **RESTRAINING ORDER AND** |
| CONSTANCE KANG | : | **INJUNCTIVE RELIEF AND** |
| | : | **DECLARATORY JUDGMENT HEREIN** |
| and | : | |
| | : | |
| ZHONGYI LUI | : | |
| | : | |
| and | : | |
| | : | |
| BANANA CAPITAL PARTNERS, LLC 15525 Mango Isle Street Winter Garden, Florida 34787 | : | |
| SERVE ALSO: LEGALINC CORPORATE SERVICES, INC., Agent 131 Continental Drive, Suite 305 Newark, Delaware 19713 | : | |
| Defendants. | : | |

Now come Plaintiffs, Zach Fugman individually, and Zach Fugman derivatively on behalf of Banana Capital Partners, LLC, by and through counsel, and pursuant to Fed. R. Civ. P. 15(a)(1), and Fed. R. Civ. P. 23.1, for their First Amended Verified Complaint against Defendants

Constance Kang and Zhongyi Lui, and, nominally, against Banana Capital Partners, LLC, state as follows:

1. This action is brought for the immediate issuance of a temporary restraining order and the subsequent issuance of a preliminary injunction and permanent injunction to restrain Defendants from undertaking any action on behalf of Banana Capital Partners, LLC ("BCP"), and further to restore Mr. Fugman's control over BCP.

2. In particular, immediate intervention of this Court is necessary to restrain Defendants from: (i) blocking Mr. Fugman's access to the property managed by BCP; (ii) blocking Mr. Fugman's access to BCP's financial records; (iii) blocking Mr. Fugman's access and control over BCP's management of a Chase Bank checking account; (iv) commingling BCP's funds with their personal accounts; (v) further misappropriating BCP's funds; and (vi) preventing Defendants' from expelling Mr. Fugman from BCP in retaliation for bringing this lawsuit. Immediate and irreparable harm exists as Defendants are misappropriating BCP's assets, subjecting the property managed by BCP to foreclosure, and subjecting BCP to substantial liability for mismanagement of the Property. Thus, immediate intervention of this Court is necessary.

## JURISDICTON AND PARTIES

3. Plaintiff, Zach Fugman, is an individual residing in Houston, Texas. Mr. Fugman is a member of BCP.

4. BCP is a Delaware limited liability company with its principal place of business located in Cincinnati, Ohio. BCP is a nominal defendant inasmuch as it is a real party in interest given the derivative nature of this action and the claims alleged herein.

5. Defendant Constance Kang ("Kang") is an individual residing at 739 East McMillan, Apt. 1119, Cincinnati, Hamilton County, Ohio 45206.

6. Defendant Zhongyi Liu ("Liu") is an individual residing at 739 East McMillan, Apt. 1119, Cincinnati, Hamilton County, Ohio 45206.

7. Kang and Liu are married.

8. Kang and Liu collectively own a 49% membership interest in BCP.

9. Mr. Fugman individually owns the remaining 51% membership interest in BCP.

10. This action was originally filed in the state courts in Hamilton County, Ohio. Defendants removed the case to federal court on the basis of diversity jurisdiction, claiming that Defendants are residents of the State of Florida.

## BACKGROUND FACTS

11. On or about May 23, 2022, the members of BCP executed an operating agreement providing for the management and governance of BCP. A true and accurate copy of the BCP Operating Agreement is attached as **Exhibit 1**.

12. BCP manages the real estate located at 5484 Bahama Terrace, Cincinnati, Hamilton County, Ohio 45223 (the "Property").

13. The Property, known as Serenity at High Point, consists of six apartment buildings, each containing eleven units, for a total of sixty-five units, plus one unit converted into an office.

14. The Property is owned by Serenity at High Point, LLC, ("Serenity") a Delaware limited liability company.

15. To aid in the management of the Property, BCP manages checking accounts on behalf of Serenity at Chase Bank (the "Chase Bank Account").

16. BCP is supposed to deposit income in the Chase Bank Account and use the Chase Bank Account to pay debts related to the Property.

17. Since August 18, 2022, Kang and Liu have overseen the day-to-day management of the Property, including collecting rents, evicting tenants, performing maintenance, and marketing units for rent.

18. Kang was responsible for maintaining financial records related to the Property for both BCP's tax reporting purposes and for reporting the financial condition of the Property to its owner, Serenity.

19. Serenity has communicated to BCP that it intends to sell the Property, and that it has received several offers from potential buyers.

20. Serenity's listing broker requested financial records related to the management of the Property that would allow prospective buyers to complete their due diligence before agreeing to buy the Property.

21. Thus, in February of 2024, Mr. Fugman requested Kang to update and complete BCP's records so that they could be provided to prospective buyers of the Property and so that BCP could provide its accountants with documentation necessary to complete tax returns.

22. From February 2024, through August 2024, Kang delayed providing a full disclosure of BCP's financial records, and often insisted that prospective buyers did not need all the financial records to complete their due diligence.

23. On or about August 27, 2024, after repeated requests, Kang provided incomplete financial records.

24. Kang's delay and resistance to providing complete financial records caused great concern to Mr. Fugman who was trying to communicate with investors in Serentiy concerning the state of the Property and a potential sale.

25. As a result, Mr. Fugman started investigating the financial information that Kang provided and information that he was able to independently access concerning the Property.

26. Based on the number of rental units at the Property, and the average rent, Mr. Fugman knew that BCP should be collecting approximately $50,000.00/month in rent.

27. Kang was supposed to utilize the property management software platform known as ResMan to keep track of information related to tenants, income, debts, occupancy rates, delinquency and other information related to the Property.

28. Upon reviewing the information Kang uploaded into ResMan, Mr. Fugman saw that an average of 96.22% of the units at the Property were occupied in 2024. A true and accurate copy of the Occupancy Logs are attached as **Exhibit 2**.

29. Upon reviewing the information Kang uploaded into ResMan, Mr. Fugman saw that there is a significant delinquency in the amount of money that should have been collected from tenants based on the occupancy rates. A true and accurate copy of the Delinquency Log is attached as **Exhibit 3.**

30. Through July 2024, the monthly delinquency ranged between $10,000 and $16,000.

31. In August 2024, the delinquency ballooned to $35,212.45.

32. In September 2024, the monthly delinquency was $34,138.45.

33. In October 2024, the monthly delinquency was $42,267.97.

34. As of November 27, 2024, the delinquency increased to $52,168.51.

35. Taken together, there are only two explanations for the discrepancy in the occupancy and delinquency figures: (i) tenants are occupying the units but not paying rent; or (ii) Kang and Liu are misappropriating rent payments for their personal use.

36. When Mr. Fugman asked Kang about the discrepancy, Kang reported that she had been receiving some rent payments from tenants personally via Cash App, which she claimed would be deposited into BCP's banking account from time to time.

37. Kang, however, refused to provide Mr. Fugman with her Cash App records.

38. Mr. Fugman then contacted one of the tenants whose accounts showed as delinquent in the ResMan platform. The tenant responded with screenshots of their phone showing a Cash App transaction paid to Kang for rent, despite the fact that his account appeared as delinquent in the ResMan software. A true and accurate copy of the screenshots and the tenant's accounting in ResMan are attached as **Exhibit 4**.

39. On November 22, 2024, Mr. Fugman and his wife emailed Kang to let her know they would be traveling from Houston, Texas to Cincinnati to view the Property and specifically requested to meet with Kang at the Property to discuss reconciling income and deposits, strategic planning for 2025, and enhancing the management strategy. Kang agreed to meet with Mr. Fugman at the Property at 2:00 p.m. on Monday November 25, 2024.

40. On November 25, 2024, Mr. Fugman traveled to Cincinnati from Houston, Texas, to attend the meeting at the Property with Kang. At 11:58 a.m., just two hours before the scheduled meeting, Kang emailed Mr. Fugman stating that she would have to reschedule the meeting because she had undergone surgery that morning. A true and accurate copy of this email exchange is attached as **Exhibit 5**.

41. After receiving the email from Kang, Mr. Fugman entered the Property using a security code that Kang had created for the members of BCP. While in the office, Mr. Fugman observed stacks of unpaid bills on the desk and a letter from a lawyer threatening to sue BCP for

6

wrongfully withholding security deposit from a tenant. Kang had never informed Mr. Fugman of the unpaid bills or threat of a lawsuit.

42. That same day, November 25, 2024, Mr. Fugman accessed the Chase Bank Account online, using the login credentials Kang had previously provided. Mr. Fugman saw that there was approximately $100,000.00 in the Chase Bank Account.

43. The following day, November 26, 2024, Mr. Fugman returned to the Property but found that the security code he used to enter the Property the prior day no longer worked. Mr. Fugman then saw Liu leaving the Property and asked him why the codes had been changed. Liu responded that there was no reason for Mr. Fugman to be entering the Property. Liu then got into his vehicle and left.

44. Mr. Fugman's accounting team then attempted to log into the Chase Bank Account as he had the day prior but discovered that the login credentials had also been changed and they were no longer able to access the checking account.

45. Later that night, Kang sent a text message to Mr. Fugman telling him he was not allowed on the Property.

46. Mr. Fugman has since attempted to contact Kang to figure out why she was locking him out of the Property and the Chase Bank Account, but Kang has refused to respond. She has not answered any phone calls from Mr. Fugman in November. A true and accurate copy of Mr. Fugman's call log to Kang in November 2024 is attached as **Exhibit 6.**

47. Although Mr. Fugman is the majority owner of BCP, Kang and/or Liu are actively preventing him from accessing both the Property and the Chase Bank Account.

48. Due to: (i) Defendants' refusal to provide Mr. Fugman access to the books and records of BCP, (ii) Defendants changing the security codes to prevent Mr. Fugman from accessing

7

the Property; Defendants changing the login credential for the Chase Bank Checking Account to prevent Mr. Fugman from monitoring the account; and (iv) Defendants' refusal to meet with Mr. Fugman to discuss these issues, it is clear that any further demand upon Defendants to comply with their duties under the BCP operating agreement would be futile.

49. Thus, on December 2, 2024, Mr. Fugman filed a lawsuit against Defendants on behalf of himself and BCP in the Court of Common Pleas in Hamilton County, Ohio.

50. The Hamilton County Court of Common Pleas scheduled a hearing on Plaintiffs' motion for a temporary restraining order to be held on December 5, 2024.

51. On December 4, 2024, Defendants removed the case from the state court in Hamilton County, Ohio to this Court.

52. On December 6, 2024, Defendants retaliated against Mr. Fugman by executing a "Unanimous Decision of Remaining Members of Banana Capital Partners, LLC Expelling Zachary Fugman." (the "Expulsion Letter") A true and accurate copy of this document is attached as **Exhibit 7**.

53. In the Expulsion Letter, Defendants purport to expel Mr. Fugman from BCP because he filed this lawsuit on behalf of BCP.

54. By executing the Expulsion Letter, Defendants hope to prevent Mr. Fugman from holding them accountable for their fiduciary breaches.

55. By: (i) failing to account for the financial records; (ii) misappropriating corporate funds; (iii) locking Mr. Fugman out of the Property; (iv) locking Mr. Fugman out of the checking account, and (v) attempting to expel Mr. Fugman from BCP, Kang and Liu have breached the BCP Operating Agreement and breached fiduciary duties to BCP and Fugman.

56. Moreover, their conduct poses a substantial risk of causing irreparable harm to Mr. Fugman and BCP.

57. Pursuant to Fed. R. Civ. 23.1, Mr. Fugman verifies that this action is not a collusive effort to confer jurisdiction that the Court would otherwise lack.

## COUNT ONE
### (Declaratory Judgment)

58. Plaintiffs incorporate the preceding paragraphs as if fully restated here.

59. There is an actual justiciable dispute between the parties relating to the rights, status, and other legal relations of the parties and as to the rights and obligations of the parties under the Operating Agreement.

60. Without this Court's involvement and resolution of this matter by declaration of his rights under the Operating Agreement, Mr. Fugman's rights have been and will continue to be adversely affected and uncertain.

61. Section 7.2(b) of the Operating Agreement provides, in relevant part, that "each Member shall be allowed reasonable access to [company books and records] for a purpose reasonably related to the Member's service to the Company in a management capacity."

62. Defendants have breached the Operating Agreement by refusing to provide Mr. Fugman with the company's books and records, and by locking Mr. Fugman out of the Chase Bank Account.

63. Defendants have retaliated against Mr. Fugman by seeking to expel Mr. Fugman from BCP after Mr. Fugman initiated this lawsuit.

64. Pursuant to Fed. R. Civ. P. 57, and the powers in equity inherent in this Court, Plaintiffs seek a declaration of the rights and obligations of the parties under the BCP Operating Agreement.

65. Accordingly, Plaintiffs request that this Court enter a declaratory judgment finding that: (i) Defendants cannot expel Mr. Fugman from BCP for initiating this lawsuit; (ii) Mr. Fugman remains a member of BCP; (iii) Mr. Fugman has a right to access BCP's books and records, the Chase Bank Account, and the Property itself; and that, (iv) Defendants have breached the operating agreement by refusing to supply such documents and access to Mr. Fugman.

66. Plaintiffs further request and order from this Court compelling Defendants to provide Mr. Fugman with access to BCP's books and records, the Chase Bank Account, and the Property itself.

## COUNT TWO
**(Breach of Operating Agreement)**

67. Plaintiffs incorporate the preceding paragraphs as if fully restated here.

68. Section 7.2(b) of the Operating Agreement provides, in relevant part, that "each Member shall be allowed reasonable access to [company books and records] for a purpose reasonably related to the Member's service to the Company in a management capacity."

69. Defendants have breached the Operating Agreement by refusing to provide Mr. Fugman with the company's books and records, and by locking Mr. Fugman out of the Chase Bank Account.

70. Defendants have further breached the operating agreement by attempting to expel Mr. Fugman from BCP without having cause to do so.

71. Mr. Fugman has suffered damages as a direct and proximate result of Defendants' breach of the Operating Agreement in an amount to be determined at trial, in excess of $25,000.00.

## COUNT THREE
**(Breach of Fiduciary Duties)**

72. Plaintiffs incorporate the preceding paragraphs as if fully restated here.

73. As set forth herein, Defendants have breached their fiduciary duties to BCP by failing to maintain BCP's books and records, commingling BCP's funds with their personal accounts, and misappropriating BCP's funds.

74. Defendants' conduct described above constitutes gross negligence, bad faith, and/or willful misconduct.

75. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs have suffered damages in excess of $25,000.00, in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs pray that this Court enter judgment in their favor and against Defendants as follows:

A. Ordering Defendants to pay Plaintiff damages in an amount to be proven at trial, but in excess of $25,000;

B. A declaration as to the rights of Mr. Fugman to remain a member of BCP, to access BCP's books and financial records, to access the Chase Bank Account, and to access the Property;

C. A declaration ordering Defendants to provide Mr. Fugman with BCP's books and financial records, the company's checking account, and access to the Property.

D. A declaration that Defendants have breached the Operating Agreement.

E. Issuance of all appropriate injunctive relief, including issuance of a temporary restraining order and preliminary and permanent injunction that:

(i) prohibits Defendants from obstructing Mr. Fugman's access to BCP's records and/or the Property;

(ii) Prohibits Defendants from spending and/or transferring any corporate funds without Mr. Fugman's written approval;

  (iii) Prohibits Defendants from collecting rent monies, depositing rent money in their personal accounts, and further orders Defendants to pay over all rent money received in personal accounts to the Chase Bank Account.

  (iv) Provides Mr. Fugman with the right to collect rents and pay debts on behalf of BCP;

  (v) Orders Defendants to turn over access to all books and records of BCP to Mr. Fugman.

F. Compensatory damages in an amount to be determined at trial for Defendants' breach of the Operating Agreement,

G. Compensatory damages in an amount to be determined at trial for Defendants' breach of their fiduciary duties to BCP;

H. Punitive damages and Plaintiffs' reasonable attorney's fees incurred herein; and

I. All other relief at law or in equity which this Court deems proper and just.

Respectfully submitted,

/s/ Bradley M. Gibson

Christopher P. Finney, Esq. (0038998)
Bradley M. Gibson, Esq. (0087109)
FINNEY LAW FIRM, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
(513) 943-5669
(513) 943-6669 (fax)
chris@finneylawfirm.com
brad@finneylawfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been electronically filed on the 9th day of December 2024, and electronically served upon counsel of record on the same date through the CM/ECF of the USDC for the Southern District of Ohio.

/s/ Bradley M. Gibson
Bradley M. Gibson, Esq. (0087109)

## VERIFICATION

State of Ohio, County of Hamilton     )) ss:

    Comes now Zach Fugman, and having been duly cautioned and sworn, states that he has read the foregoing *First Amended Verified Complaint* and that, upon his own knowledge, information or belief, said allegations are true or believed by him to be true.

_____
Zach Fugman

    Sworn to and subscribed before me, a Notary Public in and for the State of Texas, on this 8th day of December, 2024.

_____
NOTARY PUBLIC
My Commission Expires: August 5, 2025

[NOTARIAL SEAL]

RENATO SANTACRUZ
Notary Public, State of Texas
Comm. Expires 08-05-2025
Notary ID 133252950

13